**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LOUISIANA WHOLESALE DRUG CO., INC., On Behalf of Itself and All Others Similarly Situated, | Civil No. 07-cv-7343 (HB) |
| Plaintiffs, | Hon. Harold Baer, U.S.D.J. ECF Case |
| v. | |
| SANOFI-AVENTIS, SANOFI-AVENTIS U.S. LLC, and AVENTIS PHARMACEUTICALS INC., | |
| Defendants. | |

**PLAINTIFF LOUISIANA WHOLESALE DRUG CO., INC.'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT SANOFI-AVENTIS' MOTION TO DISMISS FOR INSUFFICIENCY OF SERVICE OF PROCESS**

## INTRODUCTION

Plaintiff Louisiana Wholesale Drug Co., Inc. ("Plaintiff" or "Louisiana Wholesale") alleges that Defendants Sanofi-Aventis ("SA"), Sanofi-Aventis U.S. LLC ("SA-US") and Aventis Pharmaceuticals, Inc. ("API") (collectively "Defendants") unlawfully maintained their monopoly over their brand name drug Arava and its generic equivalents by filing an objectively baseless Citizen Petition with the Federal Food and Drug Administration ("FDA") that was intended to, and caused, delay in FDA approval of multiple generic versions of Arava.  As a result of Defendants' unlawful conduct, Louisiana Wholesale and the proposed class of direct purchasers were denied the opportunity to purchase less expensive generic versions of Arava, and were forced to pay higher prices for branded Arava.

Defendant SA, a French corporation, moves to dismiss Louisiana Wholesale's Complaint based solely on insufficient service of process.  SA does not challenge this Court's personal jurisdiction over it under Rule 12(b)(2), nor does it challenge that it received timely notice of Plaintiff's Complaint.  Rather, SA argues that, because it is a foreign corporation, Plaintiff was required by Fed. R. Civ. P. 4 to serve it in France, via the Hague Convention, rather than at SA-US's headquarters in Bridgewater, New Jersey - - where "Sanofi-Aventis conducts business in the U.S."[1]

However, Rule 4 requires no such thing.  To the contrary, the law is clear that proper service upon a domestic subsidiary is valid service on a foreign entity where the subsidiary is doing all the business the foreign entity would do, were it in the U.S. by its own

---

[1] *See* SA-US website at http://www.sanofi-aventis.us/live/us/en/layout.jsp?scat=0F61A954-E5D2-4342-BB93-6E6392AB61C1 (last visited Nov. 7, 2007), attached hereto as Exhibit 1. *See also* SA website at http://en.sanofi-aventis.com/group/international/northamerica_unitedstates.asp (last visited Nov. 8, 2007), attached hereto as Exhibit 2.

1

officials. *See Sankaran v. Club Mediterranee, S.A.*, 1998 U.S. Dist. LEXIS 11750, at *16 (S.D.N.Y 1998) *16 (citing *Frummer v. Hilton Hotels Int'l, Inc.*, 19 N.Y.2d 533 (N.Y. 1967)). As discussed below, all publicly-available facts demonstrate that SA-US does everything that SA would do, if SA had its own officials in the U.S. For example, according to the FDA's website, SA-US is the named holder of the New Drug Application ("NDA") for Arava (and many other SA drugs), which provides SA-US with the regulatory authority necessary to sell Arava (and other drugs) in the United States.[2] Similarly, according to SA's public reports to investors, SA-US oversees the sales and marketing of SA's drug products in the United States, which is SA's largest market worldwide, accounting for almost 10 billion euros in 2006, or approximately 35% of SA's total net sales.[3]

This publicly-available information clearly demonstrates that service of SA at the headquarters of SA-US was sufficient under Rule 4.[4] Moreover, since the primary function of Rule 4 is "to provide the mechanism for bringing notice of the commencement of an action to defendant's attention," the fact that SA does not dispute that it received timely notice of Plaintiff's Complaint further demonstrates that the requirements of Rule 4 have been met. Thus,

---

[2] *See* FDA/Center for Drug Evaluation and Research website at http://www.accessdata.fda.gov/scripts/cder/drugsatfda/index.cfm?fuseaction=Search.DrugDetails (last visited Nov. 8, 2007), attached hereto as Exhibit 3.

[3] *See* SA's 20-F Report for the year ended December 31, 2006 at 4, 6, excerpts attached hereto as Exhibit 4; Sanofi-Aventis Business Report 2006 at 8, excerpt attached hereto as Exhibit 5.

[4] Defendants may argue that Plaintiff has failed to establish an agency relationship because the public information detailed herein does not appear in Plaintiff's Complaint. However, "[i]n considering a motion to dismiss pursuant to 12(b)(5) for insufficiency of process, a Court **must** look to matters outside the complaint to determine whether it has jurisdiction." *Khan v. Ahmed*, 2007 U.S. Dist. LEXIS 29496, *2 (S.D.N.Y. Apr. 13, 2007) (emphasis added); *Prokopiou v. The Long Island Railroad Co.*, 2007 U.S. Dist. LEXIS 27345, *15 (S.D.N.Y. Apr. 9, 2007). In addition, Plaintiff alleges that "[i]n the United States, Sanofi-Aventis conducts business and markets Arava through its affiliates, Defendant Sanofi-Aventis US LLC. . . ." Cpt. ¶ 15.

SA's motion is a transparent attempt to impose unnecessary costs and burdens on Plaintiff (and the Court), and/or to cause unnecessary delay.

While Plaintiff strongly believes that it has adequately demonstrated that a sufficient nexus exists between SA and SA-US to justify service of SA at SA-US headquarters, if the Court requires further information, Plaintiff requests, in the alternative, that the Court grant Plaintiff 30 days of discovery regarding the relationship between SA and SA-US before deciding SA's motion.[5]

## FACTUAL BACKGROUND

### A.     Plaintiff Served SA at SA-US Headquarters in New Jersey

On August 22, 2007, Plaintiff served a copy of the summons and complaint in this case upon all Defendants, including SA, at the corporate headquarters for SA-US in Bridgewater, New Jersey. Sandi Stuckert, Coordinator of SA-US, accepted service of the summons and complaint for all three Defendants. Plaintiff filed the affidavit of service of the summons and complaint on SA on September 4, 2007. SA does not dispute that it received timely notice of the action following service at SA-US.

### B.     Publicly-Available Facts Demonstrate SA-US is SA's Agent in the U.S.

Publicly-available information demonstrates that an agency relationship exists between SA, the parent corporation, and SA-US, its wholly owned subsidiary, because SA would undoubtedly perform the duties of SA-US, if SA were present in the U.S. For example, SA's

---

[5] Counsel for SA initially represented to Plaintiff that SA had nothing whatsoever to do with the conduct alleged in Louisiana Wholesale's Complaint, and asked Plaintiff to agree to dismiss SA, pursuant to a tolling agreement. In order to test SA's representation, Plaintiff requested that Defendants provide limited information and documents relevant to the relationship between the corporate entities, especially as it related to Defendants' Citizen Petition. SA refused to provide any of the documents or information Plaintiff requested. But SA did inform Plaintiff that SA actually had some involvement in, and/or knowledge about, Defendants' Petition, indicating to Plaintiff that SA is properly part of this suit.

3

publicly-available financial reports, into which SA-US's financial results are consolidated, demonstrate that SA-US performs vital functions for SA in the United States. In 2006, SA reported that:

- "approximately 35.1% of our net sales were realized in the United States." (Exhibit 4 at 4, 6).

- The U.S. is SA's top market worldwide, with more than €9.96 billion in sales in 2006 alone. (*Id.* at 8. *See also* Exhibit 5 at 8.)

- "We have a global sales force of 35,900 representatives, including approximately 12,400 in Europe, *8,800 in the United States,* 1,700 in Japan and 1,800 in China." (Exhibit 4 at 55) (emphasis added).

- "We rank ninth in the United States with a 4.0% market share." (*Id.* at 58).

Indeed, as the NDA holder for Arava, as well as a portfolio of SA's most important drug products, SA-US is responsible for obtaining regulatory authority to sell and market Arava and other SA drugs in the U.S. *See, e.g.*, Exhibit 3.

The SA-US website also confirms that SA-US operates as the U.S. arm of SA, providing SA with the necessary sales and marketing presence in the U.S. For instance, the website reports that: (a) "Sanofi-Aventis conducts business in the U.S. through its headquarters in Bridgewater, New Jersey," including all aspects of research and development (*see* Exhibit 1) - - the very facility at which Plaintiff effected service on SA; and (b) SA relies solely on SA-US's sales force to market its drugs in the U.S., which is one of the largest sales forces in the U.S. pharmaceutical industry. *Id.* In addition, at least one top SA-US officer, Gregory Irace, President and CEO of SA-US, is on the Executive Management Committee of SA.[6]

---

[6] *See* SA's website at http://en.sanofi-aventis.com/group/presentation/p_group_presentation_keyexecs.asp# (last visited Nov. 8, 2007), attached hereto as Exhibit 6. Although SA lists Mr. Irace as "Senior Vice President Pharmaceutical Operations USA," SA-US lists Mr. Irace as "President and Chief Executive Officer" of SA-US. *See* SA-US's website at http://www.sanofi-

4

In sum, SA-US performs numerous vital acts on behalf of SA - - which result in sales equaling almost 10 billion euros annually - - that SA would certainly perform were it present in the U.S.

## ARGUMENT

### I.     PLAINTIFF PROPERLY SERVED SA AT THE HEADQUARTERS OF SA-US

SA contends that, because it did not authorize SA-US to accept service on its behalf, Plaintiff was required by Fed. R. Civ. P. 4. to serve SA in France via the Hague Convention.[7] SA is wrong.

The primary function of Rule 4 is to "provide the mechanism for bringing notice of the commencement of an action to defendant's attention . . . ." Wright & Miller, *Federal Practice and Procedure,* § 1063, at 225. Compliance with the rules governing service of process is to be construed, "in a manner reasonably calculated to effectuate their primary purpose: to give the defendant adequate notice that an action is pending." *Top Form Mills, Inc. v. Sociedad Nationale Industria Applicazioni Viscosa*, 428 F. Supp. 1237, 1251 (S.D.N.Y. 1977).[8]

Contrary to SA's argument, Rule 4 plainly does not require service to be effected via the Hague Convention simply because the litigation involves a foreign defendant. *See Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 708 (1988) ("Where service on a

---

aventis.us/live/us/en/layout.jsp?scat=44FD6466-E2E0-4267-AAEC-DA1C45C2CC5F (last visited Nov. 8, 2007), attached hereto as Exhibit 7.

[7] *See* Memorandum of Law in Support of Defendant Sanofi-Aventis' Motion to Dismiss for Insufficiency of Service of Process at 3-4.

[8] *See also Durant v. Traditional Investments, Ltd.*, 1990 U.S. Dist. LEXIS 3074, at *8 (S.D.N.Y. Mar. 22, 1990) ("When a defendant receives actual notice of a lawsuit brought against him, technical imperfections with service will rarely invalidate the service."); *Maruzen Int'l, Co. v. Bridgeport Merchandise, Inc.*, 770 F. Supp. 155, 160 (S.D.N.Y. 1991) (same); *S.E.C. v. Tome,* 833 F.2d 1086, 1092 (2d Cir. 1987) (Rule 4 requires "the giving of notice in such a manner that there can be little doubt that the party has actual notice of the claims in order to appear and defend").

5

domestic agent is valid and complete. . . our inquiry ends and the [Hague] Convention has no further implications."). Rather, Rule 4 permits service upon a foreign corporation to be made "by delivering a copy of the summons and of the complaint to an officer, managing agent or general agent, **or to any other agent authorized . . . by law** to receive service of process. . ." Fed. R. Civ. P. 4(h)(1) (emphasis added).

Under New York law, which governs how service may be effected in this case, *see* Fed. R. Civ. P. 4(e)(1); 4(h)(1), service upon the United States agent of a foreign corporation is sufficient. *See Sankaran v. Club Mediterranee, S.A.*, 1998 U.S. Dist. LEXIS 11750, at *15-16; *Top Form Mills, Inc.*, 428 F. Supp. at 1251.

To determine whether a domestic subsidiary is an agent of its foreign parent, courts will inquire as to whether the subsidiary does "all the business the nonresidents would do were they here by their own officials." *Sankaran*, 1998 U.S. Dist. LEXIS 11750, at *16 (citing *Frummer v. Hilton Hotels Int'l, Inc.*, 19 N.Y.2d 533 (N.Y. 1967)). New York law does not require the domestic agent to be specifically authorized by the non-resident to receive service of process, nor does it require the agent to accept service voluntarily. *Id.* ("Service upon an involuntary agent may be sufficient to give notice to non-domiciliary parties.").

In *Sankaran*, the court found an agency relationship existed based on the fact that the foreign resort company would not have been able to book reservations if not for its U.S. subsidiary. *See Sankaran*, 1998 U.S. Dist. LEXIS 11750, at *8-10. The court also noted that the U.S. subsidiary provided essential services such as determining vacancies, notifying the resort of U.S. based reservations, arranging charter flights to the resorts, and promoting, advertising, and marketing the parent's resorts. *See Sankaran*, 1998 U.S. Dist. LEXIS 11750, at *10. The court held that service was proper because the cumulative effect of these activities gave rise to an

6

agency relationship since, without the subsidiary, the parent would have had to be present "by its own officials" to perform those duties. *Id.*

Similarly, in *Shaheen Sports, Inc. v. Asia Ins. Co., Ltd.*, 89 F.Supp 2d 500, 503-504 (S.D.N.Y. 2000), the court recognized that, "[i]n this circuit, it is firmly established that, in the case of a foreign corporation or partnership found to be doing business in New York by virtue of the activities of its local agent, proper service of process on that agent is considered valid service on the foreign defendant." *Id.* (citing *Top Form Mills,* 428 F. Supp. at 1251). In *Shaheen*, the court found that the domestic entity acted as the foreign parent's agent because without its subsidiary, the parent insurance company would have had to perform all the tasks that the subsidiary did, including "overseeing the investigation of claims, receiving and processing claims, and settling claims arising in the western hemisphere." *Id.* at 504.[9]

Here, SA-US conducts all essential business of SA in the U.S., assuming responsibility for the sales and marketing of a portfolio of SA's most important drug products in the U.S. - - SA's single top market with more than 9.96 billion euros in sales in 2006 alone. *See infra* at 4. The cumulative effect of SA-US' activities for SA gives rise to an agency relationship between SA and SA-US because without SA-US, SA would have had to be present in the U.S. "by its own officials" to perform these duties. Therefore, Plaintiff properly served SA at the headquarters of SA-US. The dismissal of Plaintiff's claims against SA until process could be made through the procedures of the Hague Convention would only delay the progress of this action.

---

[9] *See also Grammenos v. Lemos*, 457 F.2d 1067, 1072-73 (2d Cir. 1972) (if foreign entity is found to be "doing business" in New York, service on agent is justified); *Boryk v. deHavilland Aircraft Co., Ltd.*, 341 F.2d 666, 669 (2d Cir. 1965) (though subsidiary in forum is not labeled "agent" or authorized to accept service, if its activities serve to make corporation "present" then service on it will establish service on parent).

7

## II.     IN THE ALTERNATIVE, THE COURT SHOULD PERMIT PLAINTIFF TO DISCOVER WHETHER SA-US IS SA'S AGENT IN THE U.S.

Whether an agency relationship exists between SA and SA-US is a question of fact. *Sankaran*, 1998 U.S. Dist. LEXIS 11750, at *15.  Although Plaintiff previously requested limited discovery from SA to determine the relationship of SA and SA-US, SA has refused to provide such discovery.  Therefore, Plaintiff's only information on this issue is derived from public sources.

If the Court is not yet convinced that Plaintiff has demonstrated a sufficient nexus between SA and SA-US for purposes of service of process, Plaintiff requests that the Court grant Plaintiff 30 days to take discovery of Defendants, including deposition discovery, on the issue of the relationship between SA and SA-US before the Court rules on SA's motion. *See, e.g., Frank Sexton Enters. v. Societe De Diffusion Internationale Agro-Alimentaire*, 1998 U.S. Dist. LEXIS 13594, at *8 (E.D. Pa. 1998) (since the sufficiency of service of process depended upon the nature of the relationship between defendants, it could be evaluated only after the conclusion of jurisdictional discovery).

## CONCLUSION

For the foregoing reasons, Plaintiff requests that the Court deny SA's motion to dismiss. In the alternative, Plaintiff requests that the Court grant it 30 days to discover the relationship between SA and SA-US.

Dated: November 8, 2007

By: _/s/ Anne K. Fornecker____
Anne K. Fornecker (AF2073)
GARWIN GERSTEIN & FISHER LLP
Bruce E. Gerstein
Barry S. Taus
Anne K. Fornecker
1501 Broadway, Suite 1416
New York, NY  10011
Tel.:  212-398-0055
Fax:  212-764-6620

KAPLAN, FOX & KILSHEIMER, LLP
Richard Kilsheimer
Linda Nussbaum
850 Third Avenue, 14th Floor
New York, NY  10022
Tel:  (212) 687-1980

ODOM & DES ROCHES, LLP
John Gregory Odom
Stuart E. Des Roches
Charles F. Zimmer, II
Suite 2020, Poydras Center
650 Poydras Street
New Orleans, LA  70130
Tel.:  504-522-0077
Fax:  504-522-0078

PERCY, SMITH & FOOTE, LLP
David P. Smith
W. Ross Foote
Susan C. Segura
720 Murray Street
P.O. Box 1632
Alexandria, LA  71309-1632

Tel.:  318-445-4480
Fax:  318-487-1741

BERGER & MONTAGUE, P.C.
Daniel Berger
David F. Sorensen
Peter Russell Kohn
1622 Locust Street
Philadelphia, PA  19103
Tel.:  1-800-424-6690
Fax:  215-875-4604

KOZYAK, TROPIN &  THROCKMORTON
Adam Moskowiz
Tucker Ronzetti
2525 Ponce de Leon Blvd., 9th Floor
Miami, FL  33134
Tel.:  305-372-1800

PHELPS DUNBAR
Brent Barriere
Susie Morgan
Canal Place, Suite 2000
365 Canal Street
New Orleans, LA  70130-6534
Tel.:  504-568-1311
Fax:  504-568-9130

*Attorneys for Plaintiff Louisiana Wholesale Drug Co., Inc.*

10

## CERTIFICATE OF SERVICE

I, Anne K. Fornecker, do hereby certify that on November 8, 2007, I served the foregoing PLAINTIFF LOUSIANA WHOLESALE DRUG CO., INC.'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT SANOFI-AVENTIS' MOTION TO DISMISS FOR INSUFFICIENCY OF SERVICE OF PROCESS on the following attorneys, in the manner specified below:

*Via ECF Filing*

JONES DAY
Julia E. McEvoy
Christopher R. Farrell
Rosanna K. McCalips
51 Louisiana Avenue, NW
Washington DC  20001
Tel: 202-879-3939
Fax: 202-626-1700
jmcevoy@jonesday.com
crfarrell@jonesday.com
rkmccalips@jonesday.com

JONES DAY
Samuel Joseph Hand
222 East 41st Street
New York, New York  10017-6702
Tel: 212-326-3939
Fax: 212-755-7306
jhand@jonesday.com

*Attorneys for Defendants sanofi-aventis, sanofi-aventis u.s. llc, and Aventis Pharmaceuticals, Inc.*

KAPLAN, FOX & KILSHEIMER, LLP
Linda Nussbaum
Richard Kilsheimer
850 Third Avenue, 14th Floor
New York, NY  10022
Tel:  (212) 687-1980
rkilsheimer@kaplanfox.com
lnussbaum@kaplanfox.com

KOZYAK, TROPIN & THROCKMORTON
Adam Moskowiz
Tucker Ronzetti
2525 Ponce de Leon Blvd., 9th Floor
Miami, FL  33134
Tel:  (305) 372-1800
amm@kttlaw.com
tr@kttlaw.com

ODOM & DES ROCHES, LLP
John Gregory Odom
Stuart E. Des Roches
Charles F. Zimmer, II
Suite 2020, Poydras Center
650 Poydras Street
New Orleans, LA  70130
Tel:  (504) 522-0077
Fax:  (504) 522-0078
stuart@odrlaw.com
czimmer@odrlaw.com

BERGER & MONTAGUE, P.C.
Daniel Berger
David F. Sorensen
Peter R. Kohn
1622 Locust Street
Philadelphia, PA  19103
Tel: 1-800-424-6690
Fax:  (215) 875-4604
dsoresen@bm.net
pkohn@bm.net

*Attorneys for Plaintiff Louisiana Wholesale Drug Co., Inc.*

***Via Electronic Mail:***

PERCY, SMITH & FOOTE, LLP
W. Ross Foote
Susan C. Segura
720 Murray Street
P.O. Box 1632
Alexandria, LA  71309-1632
Tel:  (318) 445-4480
Fax:  (318) 487-1741

rfoote@psfllp.com
ssegura@psfllp.com

PHELPS DUNBAR
Brent Barriere
Susie Morgan
Canal Place, Suite 2000
365 Canal Street
New Orleans, LA  70130-6534
Tel: 504-568-1311
Fax: 568-9130
susie.morgan@phelps.com

*Attorneys for Plaintiff Louisiana Wholesale Drug Co., Inc.*

                      /s/Anne Fornecker
                      ANNE K. FORNECKER (AF-2073)
                      Garwin Gerstein & Fisher LLP
                      1501 Broadway, Suite 1416
                      New York, New York 10036
                      (Tel): 212-398-0055
                      (Fax): 212-764-6620
                      afornecker@garwingerstein.com