# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| LOUISIANA WHOLESALE DRUG CO., INC., et al., | : | Civil Action No. 07 CIV 7343 (HB) |
| | : | |
| | : | Hon. Harold Baer, U.S.D.J. |
| v. | : | ECF Case |
| | : | |
| | : | |
| | : | **PUBLIC VERSION:** |
| SANOFI-AVENTIS, et al. | : | **CONFIDENTIAL INFROAMTION** |
| | : | **REDACTED** |
| | : | |
| | : | |
| | : | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF CLASS CERTIFICATION**

Dated: January 31, 2008

## TABLE OF CONTENTS

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      A.    Plaintiffs' Allegations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      B.    Declaration of Jeffrey J. Leitzinger, Ph.D. . . . . . . . . . . . . . . . . . . . . . . . . 3

III.  ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

      A.    Class Certification is Particularly Appropriate in Antitrust Cases . . . . . . . . . . . 5

      B.    The Standard for Class Certification Under Rule 23 . . . . . . . . . . . . . . . . . . . . . 5

      C.    The Requirements of Rule 23(a) Are Satisfied . . . . . . . . . . . . . . . . . . . . . . . . . 8

            1.    Numerosity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

            2.    Commonality . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

            3.    Typicality . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

            4.    Adequacy of Representation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

      D.    The Requirements of Rule 23(b) Are Satisfied . . . . . . . . . . . . . . . . . . . . . . . . 14

            1.    Predominance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

            2.    Superiority . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

IV.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

**TABLE OF AUTHORITIES**

*Arden Arch. Specialities, Inc. v. Wash. Mills Electro Minerals Corp.,*
2002 WL 31421915 (S.D.N.Y. Sept. 17, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*In re Auction Houses Antitrust Litig.,*
193 F.R.D. 162 (S.D.N.Y. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Barone v. Safeway Steel Products, Inc.,*
2005 WL 2009882 (E.D.N.Y. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*In re Buspirone Patent & Antitrust Litig.,*
210 F.R.D. 43 (S.D.N.Y. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*In re Cardizem CD Antitrust Litig.,*
200 F.R.D. 297 (E.D. Mich. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Cordes & Co. Fin. Serv., Inc. v. A.G. Edwards & Sons, Inc.,*
502 F.3d 91 (2d Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 14, 15, 16, 17

*In re Currency Conversion Fee Antitrust Litig.,*
224 F.R.D. 555 (S.D.N.Y. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 22

*Daniel v. American Bd. of Emerg. Med.,*
269 F. Supp.2d 159 (W.D.N.Y. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 22, 23

*In re Dreyfus Aggressive Growth Mut. Fund Litig.,*
2000 WL 1357509 (S.D.N.Y. Sept. 20, 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Du Pont Glore Forgan Inc. v. American Telephone and Telegraph Co.,*
69 F.R.D. 481 (S.D.N.Y. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Fears v. Wilhelmina Model Agency, Inc.,*
2003 WL 21659373 (S.D.N.Y. July 15, 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Freeland v. AT&T Corp.,*
238 F.R.D. 130 (S.D.N.Y. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 17

*Gold Strike Stamp Co. v. Christensen,*
436 F.2d 791 (10th Cir. 1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*J.B.D.L. Corp. v. Wyeth-Ayerst Labs., Inc.,*
225 F.R.D. 208 (S.D. Ohio 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4, 8, 9, 13, 17, 22, 25

*In re J.P. Morgan Chase Cash Balance Litig.*,
242 F.R.D. 265 (S.D.N.Y. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 9, 10, 14

*Jennings Oil Co. v. Mobil Oil Corp.*,
80 F.R.D. 124 (S.D.N.Y. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Karvaly v. eBay, Inc.*,
245 F.R.D. 71 (E.D.N.Y. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Leider v. Ralfe*,
2003 WL 22339305 (S.D.N.Y. Oct. 10, 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 23

*In re Lorazepam & Clorazepate Antitrust Litig.*,
202 F.R.D. 12 (D.D.C. 2001), review denied, 289 F.3d 98
(D.C. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 9, 11, 13, 15, 16, 24

*In re Lower Lake Erie Iron Ore Antitrust Litig.*,
998 F.2d 1144 (3d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*In re Magnetic Audiotape Antitrust Litig.*,
2001 WL 619305 (S.D.N.Y. June 6, 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*In re Master Key Antitrust Litig.*,
528 F.2d 5 (2d Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Meijer, Inc. v. Warner Chilcott Holdings Co. III*,
246 F.R.D. 293 (D.D.C. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*In re Merrill Lynch & Co., Inc. Research Reports Securities Litig.*,
246 F.R.D. 156 (S.D.N.Y. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*In re NASDAQ Market-Makers Antitrust Litig.*,
169 F.R.D. 493 (S.D.N.Y. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*In re Nifedipine Antitrust Litig.*,
246 F.R.D. 365 (D.D.C. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*In re Northwest Airlines Corp.*,
208 F.R.D. 174 (E.D. Mich. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Paper Systems, Inc. v. Nippon Paper Indus.*,
281 F.3d 629 (7th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*In re Relafen Antitrust Litig.,*
218 F.R.D. 337 (D. Mass. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Robertson v. National Basketball Ass'n,*
389 F. Supp. 867 (S.D.N.Y. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Stephenson v. Bell Atlantic Corp.,*
177 F.R.D. 279 (D.N.J. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Town of New Castle v. Yonkers Contracting Co. Inc.,*
131 F.R.D. 38 (S.D.N.Y. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 8

## I.    **INTRODUCTION**

This antitrust action is one in a string of cases in this Circuit and others making materially identical allegations of antitrust injury and damages (delayed entry of generic versions of a brand-name drug causing direct purchasers to pay higher prices) and seeking identical relief (overcharge damages).[1]  It is clearly maintainable as a class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure.  No fewer than seven such actions have previously been certified under Rule 23(b)(3), including one in this very judicial district.  *See In re Buspirone Patent & Antitrust Litig.*, 210 F.R.D. 43, 55-60 (S.D.N.Y. 2002) (certifying class of direct purchasers seeking overcharge damages due to defendants' alleged delaying market entry of generic versions of anti-anxiety drug Buspar using sham litigation) (Koeltl, J.) ("*Buspirone*").  Others are cited in the margin.[2]

For purposes of class certification, this action is not meaningfully distinguishable from the delayed generic entry cases that have come before it.  The core issues here — (a) whether Aventis's Citizen Petition was a "sham," (b) whether the Citizen Petition allowed Aventis to maintain

---

[1] An "overcharge" is the difference between the price that was actually paid and the price that would have been paid had the anticompetitive conduct not occurred.  *E.g., Paper Systems, Inc. v. Nippon Paper Indus.*, 281 F.3d 629, 633 (7th Cir. 2002).  *See generally In re Lower Lake Erie Iron Ore Antitrust Litig.*, 998 F.2d 1144 (3d Cir. 1993) (direct purchaser prevented from purchasing less expensive substitute product due to an antitrust violation may seek to recover the difference in price as an overcharge).

[2] Other decisions certifying litigation classes of direct purchasers alleging wrongful suppression of generic drug competition and seeking overcharge damages include: *In re Nifedipine Antitrust Litig.*, 246 F.R.D. 365 (D.D.C. 2007) (generic entry delayed by sham marketing and distribution agreement) ("*Nifedipine*"); *Meijer, Inc. v. Warner Chilcott Holdings Co. III*, 246 F.R.D. 293 (D.D.C. 2007) (generic entry delayed by sham supply agreement) ("*Ovcon*"); *In re Relafen Antitrust Litig.*, 218 F.R.D. 337 (D. Mass. 2003) (generic entry delayed by sham patent infringement litigation) ("*Relafen*"); *In re Lorazepam & Clorazepate Antitrust Litig.*, 202 F.R.D. 12, 21 (D.D.C. 2001) (monopolization of underlying drug ingredients), *review denied*, 289 F.3d 98 (D.C. Cir. 2002) ("*Lorazepam*"); *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 297 (E.D. Mich. 2001) (generic entry delayed by illegal agreement) ("*Cardizem*").  *See also J.B.D.L. Corp. v. Wyeth-Ayerst Labs., Inc.*, 225 F.R.D. 208 (S.D. Ohio 2003) (entry of near-identical version of conjugated estrogen drug suppressed using exclusionary contracts with managed care) ("*Premarin*").

monopoly power with respect to leflunomide, and (c) the antitrust impact of Aventis's alleged delay

of generic leflunomide competition on Plaintiff and the Class (*i.e.*, overcharges) — are common to

all Class members, predominate over any conceivable individual issues, and will be proven at trial

using evidence and methodologies that are applicable classwide.  Accordingly, as detailed below,

this action is ideal for class treatment, and the Court should certify the following class:[3]

> All persons or entities in the United States who purchased 10 mg or
> 20 mg Arava tablets directly from Aventis (or any of its predecessors
> or affiliates) at any time from March 2005 until the present.[4]
> Excluded from the Class are Defendants, their predecessors, officers,
> directors, management, employees, subsidiaries, parents or affiliates,
> and all federal governmental entities.

## II.    FACTS

### A.    Plaintiff's Allegations

Louisiana Wholesale Drug Co., Inc., the plaintiff in this proposed antitrust class action case

("LWD" or "Plaintiff"), is a direct purchaser of Arava (generic name "leflunomide"), a brand-name

prescription drug used in the treatment of rheumatoid arthritis.  *See* Answer ¶ 13 (Doc. #71).  In its

complaint ("Complaint"), Plaintiff alleges that defendants Sanofi-Aventis, Sanofi-Aventis U.S. LLC,

and Aventis Pharmaceuticals, Inc. (collectively, "Aventis" or "Defendant") engaged in an illegal,

anticompetitive scheme, in violation of Section 2 of the Sherman Act (15 U.S.C. ¶ 2), to forestall

the market entry of less-expensive, AB-rated generic versions of Arava that were poised to enter the

---

[3]Similarly-defined classes have been repeatedly certified in prior cases. *E.g.*, *Buspirone*, 210 F.R.D. at 55-56; *Lorazepam*, 202 F.R.D. at 21; *Nifedipine*, 246 F.R.D. at 368. *See also Ovcon*, 246 F.R.D. at 300; *Relafen*, 218 F.R.D. at 341.

[4]LWD has amended the proposed class definition relative to the Complaint in this matter. *Cf.* Compl. ¶ 16 ("at any time from March 2005, until the anticompetitive effects of Defendant's conduct ceased") (Doc. #1).

market. *E.g.*, Compl. ¶¶ 1, 5, 82-84. The centerpiece of Aventis's scheme was the baseless, sham Citizen Petition it filed with the Food and Drug Administration ("FDA"), which was intended to, and did, delay approval of those less-expensive, generic versions of Arava. *Id.* ¶¶ 7, 52-64.[5]

When permitted to enter the market without delay, generic versions of brand-name drugs save consumers and direct purchasers substantial money by capturing most of the sales of the corresponding brand, at substantially lower prices. *Id.* ¶¶ 32-34. Through its scheme to forestall generic entry, Aventis forced direct purchasers to pay supracompetitive prices for leflunomide during the period that less-expensive generics were improperly excluded from the market and for some substantial time thereafter. *Id.* ¶¶ 9, 63-64, 70, 72, 85-86. LWD, in its own right and on behalf the class of direct purchasers it proposes to represent (the "Direct Purchaser Class" or the "Class"), seeks to recover overcharge damages under Section 4 of the Clayton Act (15 U.S.C. ¶ 15). Those overcharge damages represent the amount of extra money Plaintiff and the Class had to pay for leflunomide as a result of Aventis's illegal scheme to delay generic competition. *Id.* ¶¶ 11, 78-80.

**B.      Declaration of Jeffrey J. Leitzinger, Ph.D.**

Dr. Jeffrey Leitzinger, an economist whose expertise and analysis have previously been accepted by several courts considering the effects of delayed generic entry into pharmaceutical markets, concludes in his accompanying Declaration that common proof is abundantly available to show that a delay in generic competition for leflunomide resulted in classwide antitrust impact in the form of overcharges. *See* Declaration of Jeffrey J. Leitzinger, Ph.D., dated January 29, 2008

---

[5] Plaintiff's allegations have already been reviewed by the Court in its Opinion and Order denying Defendants' Rule 12(b)(6) motion. *See Louisiana Wholesale Drug Co., Inc. v. Sanofi-Aventis*, No. 07 Civ. 7343 (HB), Opinion & Order at 2-3 (S.D.N.Y. Jan. 18, 2008) (Doc. #73) (hereinafter "Doc. #73").

("Leitzinger Decl."), at 7-9, 27-28. Dr. Leitzinger has identified several forms of evidence, common to all class members, demonstrating such classwide antitrust impact. The evidence Dr. Leitzinger catalogs includes: (a) pertinent published economic literature and governmental studies on the well-known and marketwide effects of generic entry and delayed generic entry; (b) Aventis's own (and generic leflunomide sellers') contemporaneous internal documents analyzing the expected and actual marketwide effects of generic entry and delayed generic entry; (c) pricing data for dozens of drug molecules that have experienced generic competition, including leflunomide; and (d) the economic roles of the classes of trade composing the proposed Class. *Id.* at 7, 15-27, 28.

Such evidence is the same type of evidence of classwide antitrust impact that other courts (including this one) have deemed suitable and sufficient to justify certification of classes of direct purchasers complaining of wrongfully delayed generic competition and seeking to recover overcharges. *E.g., Buspirone*, 210 F.R.D. at 58; *Cardizem*, 200 F.R.D. at 308; *Relafen*, 218 F.R.D. at 344-46; *Nifedipine*, 246 F.R.D. at 369-71; *Ovcon*, 246 F.R.D. at 308-09. *See also Premarin*, 225 F.R.D. at 217-19. Dr. Leitzinger specifically found that this evidence, which is common to all members of the proposed Class, is available to prove that, had generic leflunomide competitors entered the market earlier, Plaintiff and all Class members would have started benefitting from substantially lower leflunomide prices much sooner than they actually did because they would have earlier been: (a) substituting lower-priced generic leflunomide for higher-priced Arava; and/or (b) paying less for branded Arava. Leitzinger Decl. at 13-15, 25-28. The evidence that Dr. Leitzinger catalogs shows that all direct purchasers of Arava paid more for leflunomide because Aventis allegedly delayed market entry of generic versions of leflunomide. It therefore proves that all Class members suffered antitrust injury in the form of overcharges due to Aventis's challenged conduct.

-4-

*Id.* at 25-28.[6] *E.g., Fears v. Wilhelmina Model Agency, Inc.*, 2003 WL 21659373, *6 (S.D.N.Y. July 15, 2003) (Baer, J.) (antitrust impact provable on classwide basis when defendants' conduct was alleged to raise prices generally) (citation omitted).

## III.   ARGUMENT

### A.    Class Certification is Particularly Appropriate in Antitrust Cases

"It seems beyond peradventure that the Second Circuit's general preference is for granting rather than denying class certification," this Court previously observed in an antitrust action. *Leider v. Ralfe*, 2003 WL 22339305, *11 (S.D.N.Y. Oct. 10, 2003) (Baer, J.) (citing *In re Visa Check/Mastermoney Antitrust Litig.*, 280 F.3d 124 (2d Cir. 2001)). Indeed, as this Court stated in *Town of New Castle v. Yonkers Contracting Co. Inc.*, 131 F.R.D. 38, 41 (S.D.N.Y. 1990), "[s]ince private enforcement of antitrust laws provides a supplement to governmental enforcement, it is our view that class action treatment of alleged antitrust violations is appropriate and desirable." Thus, in antitrust cases, "[c]lass actions are favored," and "[q]uestions regarding class certification should be resolved in favor of and not against the maintenance of [a] class action." *Daniel v. American Bd. of Emerg. Med.*, 269 F. Supp.2d 159, 188-89 (W.D.N.Y. 2003) (citations omitted).

### B.    The Standard for Class Certification Under Rule 23

This case clearly meets the applicable standard for granting class certification, which was recently articulated by this Court in *In re J.P. Morgan Chase Cash Balance Litig.*, 242 F.R.D. 265 (S.D.N.Y. 2007) (Baer, J.) ("*In re J.P. Morgan*"). To determine whether a proposed class should be certified, the district court must ensure that each subsection of Rule 23(a) is satisfied and that one

---

[6]Dr. Leitzinger also found that aggregate overcharge damages can be proven through classwide models using formulas and methodologies that do not require individualized analysis. *Id.* at 28-31.

of the subsections of Rule 23(b) is satisfied. *Id.* at 270, 272.

### The *Buspirone* Decision

This Court's prior ruling in *Buspirone* provides a blueprint for certification here. There, direct purchasers of a brand-name drug, Buspar (generic name "buspirone"), complained that the branded drug manufacturer had delayed generic competition by, among other things, filing objectively and subjectively baseless patent infringement lawsuits against would-be makers of less-expensive generic versions of buspirone. The plaintiff, the same Louisiana Wholesale Drug Co., Inc. that has filed suit in this case, complained that Buspar's maker, Bristol-Myers Squibb Co. ("BMS"), had thereby violated, *inter alia*, Section 2 of the Sherman Act, entitling direct purchasers of Buspar to treble damages measured as overcharges on their buspirone purchases. 210 F.R.D. at 57. LWD proposed certification of a class of direct purchasers similar to that proposed here. *Id.* at 55-56.

Judge Koeltl certified the direct purchaser class under Rule 23(b)(3), with LWD as the class representative. First, Judge Koeltl found that the proposed class met the "numerosity" requirement of Rule 23(a)(1), noting case law providing that a class size of forty (40) gives rise to a presumption of numerosity. *Id.* at 57. Next, Judge Koeltl noted that LWD's allegations — that BMS engaged in anticompetitive conduct that illegally delayed generic competition and thereby caused direct purchasers to incur overcharges — presented numerous issues of law and fact that were common to all members of the proposed class, as required by Rule 23(a)(2). *Id.* at 57 ("[t]here are also numerous common questions of fact and law at issue among the members of the proposed class concerning whether BMS engaged in the anticompetitive conduct alleged, the scope of this conduct, and whether this conduct resulted in any overcharges in the market for buspirone").

In finding that the "typicality" standard of Rule 23(a)(3) was satisfied, Judge Koeltl observed

that, analogous to the claims here, "Louisiana Wholesale alleges that it was injured in the same general way and by the same general course of conduct that allegedly injured the other members of the class; it asserts liability based on legal theories that are common to the class; and it clearly has adequate individual incentives to prove all of the elements of the causes of action that individual members of the class would bring individually." On those bases, Judge Koeltl found that "Louisiana Wholesale's claims are thus typical of most of the other members of the purported class." *Id.* at 57. And Judge Koeltl found the final requirement of Rule 23(a) — "adequacy of representation" — satisfied as well, because LWD had no conflict of interest with absent class members, and proposed class counsel "has pursued a number of similar antitrust actions, is experienced in this type of litigation and has vigorously pursued the claims before this Court." *Id.* at 58.

Turning to the requirements of Rule 23(b)(3), Judge Koeltl found that common issues of law and fact "clearly" predominated in a case such as the one at bar, for two independently adequate reasons. First, Judge Koeltl found that the "predominance" requirement was "clearly" satisfied because the "core of the alleged liability" of a defendant seeking to delay generic drug competition "is common to the claims of all the plaintiffs." *Id.* at 58 (emphasis added). Second, Judge Koeltl found that the overcharge theory of impact and damages LWD pursued in *Buspirone* employed "evidence that is applicable to the class as a whole," relied upon "generalized proof of class-wide injury," and "has been employed by a number of other courts in almost identical contexts." *Id.* at 58.[7] On these bases, LWD had "demonstrate[d] that common questions of law and fact predominate

---

[7]Since the time of Judge Koeltl's ruling (which itself built upon prior analogous decisions), several other courts have, under Rule 23(b)(3), certified classes of direct purchasers complaining of delayed generic entry based upon the classwide antitrust injury theory advanced by LWD in *Buspirone* and here. *E.g., Relafen*, 218 F.R.D. at 344-46; *Nifedipine*, 246 F.R.D. at 369-71; *Ovcon*, (continued...)

over any questions affecting only individual members of the class." *Id.*

Finally, Judge Koeltl found that a class action was the "superior" method of conducting the *Buspirone* litigation under Rule 23(b)(3). "The management difficulties of a direct purchaser class action are not substantial," he observed. *Id.* at 58 (citing *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 527-29 (S.D.N.Y. 1996) ("*NASDAQ*")); *Town of New Castle*, 131 F.R.D. at 41 ("class action treatment of alleged antitrust violations is appropriate and desirable")). He therefore certified the proposed class of direct purchasers of Buspar.

For the very same reasons Judge Koeltl certified *Buspirone*, this Court should certify for class treatment, under Rule 23(b)(3), this materially identical proposed class action.

### C.    The Requirements of Rule 23(a) Are Satisfied

#### 1.    Numerosity

Numerosity is easily satisfied here. Rule 23(a) permits the certification of a class action if the class is so numerous that joinder of all members is impracticable. *See* Fed. R. Civ. P. 23(a)(1). Aventis has admitted in its Answer that the identity of members of the Class can be ascertained from Aventis's sales data. Answer ¶ 17. The Class is thus "ascertainable." *See Fears*, 2003 WL 21659373, at *2-3.

Based on Aventis's data, Dr. Leitzinger found that there are 42 members of the Direct Purchaser Class. Leitzinger Decl. at 25 n.41. That number certainly satisfies Rule 23(a)(1). "While no minimum number of plaintiffs is required for a suit to be maintained as a class action, generally,

---

[7](...continued)
246 F.R.D. at 308-09. *See also Premarin*, 225 F.R.D. at 217-19. That is hardly surprising. In each case, as here, the brand-name manufacturer's alleged conduct delayed *all* direct purchasers' access to cheaper generic versions of the drug at issue, just as Aventis's conduct here prevented *all* direct purchasers' access to cheaper generic leflunomide.

courts will find a class sufficiently numerous when it comprises 40 or more members." *In re Merrill Lynch & Co., Inc. Research Reports Securities Litig.*, 246 F.R.D. 156, 164 (S.D.N.Y. 2007) (quotation omitted). *See also Ovcon*, 246 F.R.D. at 305-06 (30 members sufficient).

### 2.    Commonality

Rule 23(a) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "One question of law or fact is sufficient to satisfy this prong." *In re J.P. Morgan*, 242 F.R.D. at 272. Commonality is thus easily established in antitrust actions. *Fears*, 2003 WL 21659373, *3.[8]

Cataloging common issues of law or fact in this case is not difficult. In its Order and Opinion denying Aventis's Rule 12(b)(6) motion (Doc. #73), this Court identified various issues of law and fact:

1.    Whether Aventis possesses monopoly power in a relevant market;

2.    The definition and "appropriate circumscription" of the antitrust product market relevant to this case;

3.    Whether Aventis wilfully maintained its monopoly power in violation of Section 2 of the Sherman Act;

4.    Whether Aventis's Citizen Petition had a "reasonable chance of success";

5.    Whether Aventis's Citizen Petition was "directed at harming the generic manufacturers' interests in some manner distinct from preventing any improper labeling of the generic leflunomide";

---

[8]In every other federal antitrust action complaining of delayed generic competition, commonality was easily found. *E.g.*, *Buspirone*, 210 F.R.D. at 57 (commonality satisfied by issues of fact and law concerning "whether BMS engaged in the anticompetitive conduct alleged, the scope of this conduct, and whether this conduct resulted in any overcharges in the market for buspirone"); *Relafen*, 218 F.R.D. at 342 (same); *Lorazepam*, 202 F.R.D. at 26-27 (same); *Cardizem*, 200 F.R.D. at 303-04; *Ovcon*, 246 F.R.D. at 300. *See also Premarin*, 225 F.R.D. at 213 (same).

6.    "[T]he circumstances surrounding Aventis's filing of the [Citizen P]etition one year after the generic manufacturers submitted their ANDAs for FDA approval when no new health and safety information on the loading dose or leflunomide in general and no new FDA regulations on labeling had occurred";

7.    Whether Aventis "sought to protect the public from deficient labeling and non-bioequivalent strengths of leflunomide"; and

8.    Whether Aventis "intended or could reasonably expect to affect FDA labeling policy with respect to the five ANDAs" or instead "filed the Petition solely to delay or impede the approval of generics."

Doc. #73 at 4, 6-8, 9. Each of these issues is common to the Class. Other issues of fact and law common to the Class include whether and to what extent Aventis's anticompetitive conduct prevented or delayed generic entry into the relevant market; and whether, had generic competitors been able to enter the market and compete with Aventis earlier, Plaintiff and members of the Class would have paid less for leflunomide. *See also* Compl. ¶ 20(a)-(e) (nonexclusive list of common issues of law and fact).[9] Thus, the commonality requirement is amply satisfied here.

### 3.    Typicality

"The typicality requirement is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *In re J.P. Morgan*, 242 F.R.D. at 272; *Fears*, 2003 WL 21659373, *4. For example, in *Buspirone*, the "typicality" requirement was found to have been met, because

---

[9] *See also Cordes & Co. Fin. Serv., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91 (2d Cir. 2007) ("[t]hese questions, at least, are common: (1) all factual and legal questions that must be resolved to determine whether the defendants violated . . . the Sherman Act; and (2) all factual and legal questions that must be resolved to decide whether, assuming a plaintiff paid supracompetitive prices, that payment was caused by the defendants' antitrust violation and constitutes the kind of injury with which the antitrust laws are concerned") ("*Cordes*"). To comply with Rule 23(c)(1)(B), LWD has cataloged, in the accompanying proposed Order, a summary version of the common issues of law and fact discussed above and, in addition, the classwide defenses asserted by Aventis in its Answer.

-10-

> Louisiana Wholesale alleges that it was injured in the same general way and by the same general course of conduct that allegedly injured the other members of the class; it asserts liability based on legal theories that are common to the class; and it clearly has adequate individual incentives to prove all of the elements of the causes of action that individual members of the class would bring individually.

210 F.R.D. at 57.[10]  For the same reasons, typicality is met here.  LWD alleges on behalf of the proposed Class (and thus would prove at trial) the very same manner of injury from the very same course of conduct that it complains of for itself.  *E.g.*, Compl. ¶¶ 9, 18, 63-66, 80.  LWD asserts on its own behalf (and thus would proceed upon at trial) the same legal theory — a violation of Section 2 of the Sherman Act premised upon, *inter alia*, the objective and subjective baselessness standard of *Professional Real Estate Investors* and its progeny — that it asserts for the Class.  *E.g.*, Compl. ¶¶ 11, 58.  And, as this Court has already found in denying Aventis's Rule 12(b)(6) motion, LWD has adequate individual incentives to prove its case.  Doc. #73 at 8-9 (finding that LWD "alleges direct injuries" that are "definite, not speculative," "alleges identifiable damages," and "has self-interest in pursuing the claim").  The typicality standard is clearly met.

### 4.    Adequacy of Representation

The final requirement of Rule 23(a) — that the proposed class representative "fairly and adequately protect the interests of the class" — is also easily established here.  This requirement is divided into two prongs: (1) the representative's interests must not conflict with absent class members' interests, and (2) the representative and its attorneys must be able to prosecute the action vigorously.  *Fears*, 2003 WL 21659373, at *5.

---

[10]The typicality requirement has likewise been found satisfied in every other proposed class action complaining of delayed generic entry.  *E.g.*, *Relafen,* 218 F.R.D. at 343; *Lorazepam*, 202 F.R.D. at 27; *Cardizem*, 200 F.R.D. at 304-05; *Ovcon*, 246 F.R.D. at 301-02.

a.     **Absence of Conflict**

A proposed class representative is adequate for purposes of Rule 23(a) unless it has non-speculative conflicts with absent class members that are "so palpable as to outweigh the substantial interest of every class member in proceeding with the litigation." *NASDAQ*, 169 F.R.D. at 513, 514-15. To warrant any consideration at all, the conflict must be "apparent, imminent, and on an issue at the very heart of the suit" and "must be such that the plaintiff's interests are placed in significant jeopardy." *Fears*, 2003 WL 21659373, *5 (citation omitted). A "prognosis of a potential conflict" is insufficient (*id.* at *6), as is a "speculative" conflict. *See Freeland v. AT&T Corp.*, 238 F.R.D. 130, 142 (S.D.N.Y. 2006).

There are no cognizable conflicts between LWD and absent class members here. Like LWD, each Class member has the same interest in establishing Aventis's liability and obtaining (and maximizing) treble overcharge damages. By pursuing this litigation on their behalf, LWD will necessarily advance the common interests of the Class. *E.g.*, *Fears*, 2003 WL 21659373, *6 ("[a]ll the class members share a common interest in proving the existence, scope and effect of defendants' ongoing price fixing, which allegedly led to inflated and unlawful commission rates and expenses"); *Arden Arch. Specialities, Inc. v. Wash. Mills Electro Minerals Corp.*, 2002 WL 31421915, *6 (S.D.N.Y. Sept. 17, 2002) ("[i]n the instant case, General Refractories similarly has an interest in vigorously pursuing the liability stage of the case, so that it can obtain money damages"). In fact, LWD has repeatedly been found to satisfy Rule 23(a)(4) in the litigation context, and thus to lack conflicts with absent class members, when pursuing cases seeking overcharges for delayed generic competition. *E.g.*, *Buspirone*, 210 F.R.D. at 58; *Relafen*, 218 F.R.D. at 343; *Cardizem*, 200 F.R.D.

-12-

at 305-06; *Ovcon*, 246 F.R.D. at 302 & n.8.[11]

### b.    Qualifications of Counsel

Plaintiff's counsel are well-qualified to represent the Class in this case. They have extensive experience and expertise in antitrust, class action, and complex civil litigation, and have together successfully, and efficiently, prosecuted several class action cases involving delayed generic competition, showing each time that they treat their fiduciary duties toward absent class members with the utmost seriousness.[12] Owing to the natural division of issues an antitrust case presents, a division of labor among the various firms has emerged over the course of several cases that eliminates duplication of work. This Court, as well as Magistrate Judge Peck, have witnessed first hand, including through briefs and oral argument, the vigor and commitment with which proposed

---

[11]Moreover, in *Buspirone*, this court specifically found that LWD did not stand in a meaningfully different position from the "Big 3" national drug wholesalers — Cardinal Health, Inc., McKesson Corp., and AmerisourceBergen Corp. — for Rule 23 purposes. 210 F.R.D. at 58-61. In so finding, this court rejected defendant's arguments that, compared with regional wholesalers like LWD, the "Big 3" wholesalers supposedly realize greater profits from sales of more expensive branded products and thus supposedly benefit from delayed generic competition. *Id.*

[12]Proposed class counsel's resumes are attached hereto as Exhibit "A." As their resumes show, virtually all of the firms representing LWD are, and have previously been, involved in antitrust class actions involving anticompetitive conduct in the pharmaceutical industry that causes delayed generic drug competition. *E.g., In re Remeron Antitrust Litig.*, No. 03-CV-0085 (D.N.J.) (settled for $75 million in 2005); *Relafen*, No. 01-12239-WGY (D. Mass.) (settled for $175 million in 2003); *Buspirone*, No. 01-MDL-1413 (S.D.N.Y.) (settled for $220 million in 2003); *Cardizem*, No. 99-MDL-1278 (E.D. Mich.) (settled for $110 million in 2002); *In re Terazosin Hydrochloride Antitrust Litig.*, No. 99-MDL-1317 (S.D. Fla.) (settled for $74.5 million in 2005); *Lorazepam*, MDL 1290 (D.D.C.) (settled for $35 million in 2003); *North Shore Hematology and Oncology Associates, P.C. v. Bristol-Myers Squibb Co.*, No. 1:04-CV-248 (D.D.C.) (settled for approx. $65 million); *Oncology & Radiation Associates, P.A. v. Bristol-Myers Squibb Co.*, No. 1:01-CV-02313 (D.D.C.) (settled for approx. $50 million). Virtually all have been adjudged adequate under Rule 23(a)(4) standards in prior antitrust cases involving delayed generic entry. *E.g. Buspirone*, 210 F.R.D. at 58; *Relafen*, 218 F.R.D. at 343; *Cardizem*, 200 F.R.D. at 305-06; *Ovcon*, 246 F.R.D. at 302 & n.8; *Nifedipine*, 246 F.R.D. at 368-69. *See also Premarin*, 225 F.R.D. at 217.

Class counsel have prosecuted this action thus far. Such a showing satisfies Rule 23(g) as well as 23(a)(4). *See In re J.P. Morgan*, 242 F.R.D. at 276-77 (Rule 23(g) standards).

In sum, the adequacy requirement is met here.

**D.    The Requirements of Rule 23(b)(3) Are Satisfied**

Rule 23(b)(3) requires: (1) that the Court find that common questions of law or fact predominate over individual questions; and (2) that a class action is superior to other available methods of adjudication. Plaintiff satisfies both requirements here.

**1.    Predominance**

"The predominance requirement is met if the plaintiff can establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, predominate over those issues that are subject only to individualized proof." *Cordes*, 502 F.3d at 107-08. The predominance requirement calls only for predominance, not exclusivity, of common questions, and is generally satisfied unless it is "clear that individual issues will overwhelm the common questions" and "render the class action valueless." *In re Currency Conversion Fee Antitrust Litig.*, 224 F.R.D. 555, 564 (S.D.N.Y. 2004) ("*In re Currency*"); *NASDAQ*, 169 F.R.D. at 517. Thus, predominance is "readily met" in antitrust cases. *Cordes*, 502 F.3d at 108 (citation omitted).[13]

Courts have found time and time again, in federal antitrust cases alleging delayed generic competition, that common legal and factual questions predominate over any conceivable individual

---

[13]*See also Fears*, 2003 WL 21659373, *5 (in an antitrust case, "[t]he predominance requirement will be generally met along with typicality unless it is clear that individual issues will overwhelm the common questions"); *In re Dreyfus Aggressive Growth Mut. Fund Litig.*, 2000 WL 1357509, *11 (S.D.N.Y. Sept. 20, 2000) (Baer, J.) (predominance standard "easily met" where "[a]ll class members' claims arise from a common nucleus of facts, or more precisely, similar written documents and an allegedly similar course of conduct").

-14-

issues. *Buspirone*, 210 F.R.D. at 58-59; *Relafen*, 218 F.R.D. 343-46; *Lorazepam*, 202 F.R.D. at 29-30; *Cardizem*, 200 F.R.D. at 308; *Nifedipine*, 246 F.R.D. at 369-71; *Ovcon*, 246 F.R.D. at 307-13. That is because *all* direct purchasers are deprived of the competitive benefits of less expensive generic drugs when, as here, a branded drug manufacturer allegedly acts to block or delay their entry into the market entirely. The predominance requirement is easily met here, therefore.

"The three required elements of an antitrust claim are (1) a violation of antitrust law; (2) injury and causation; and (3) damages." *Cordes*, 502 F.3d at 105. It is to the classwide proof of those elements we now turn.

### a.    A Violation of the Antitrust Laws

To establish a claim for monopolization under Section 2 of the Sherman Act, LWD must show "(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." Doc. #73, at 4. Monopoly power is "the power to control prices or exclude competition." Doc. #73, at 9 (citations omitted).

The relevant proof of Aventis's alleged misconduct "will not vary among class members." *NASDAQ*, 169 F.R.D. at 518. Here, LWD alleges that Aventis has engaged in a single course of anticompetitive conduct — hatching a scheme to delay generic leflunomide competition, the centerpiece of which was an objectively baseless Citizen Petition filed with FDA — that wrongfully maintained Aventis's monopoly power over leflunomide in that it (a) excluded generic leflunomide competitors and thereby (b) permitted Aventis to ensure that direct purchasers were forced to buy expensive branded Arava from Aventis rather than being given the opportunity to purchase less-expensive generic versions of leflunomide that were identical to Arava in all material respects.

-15-

If pursuing this case individually, each Class member would have to prove that exact same course of conduct, using the exact same documents and witnesses. Predominance is therefore satisfied merely on the issue of antitrust violation. *See Fears*, 2003 WL 21659373, at *6 (if a representative plaintiff alleges the defendant has engaged in a single course of anticompetitive conduct, "the relevant proof . . . will not vary among class members," the "action clearly presents a common question that is fundamental to all class members," and the predominance requirement is easily satisfied). Indeed, in *Buspirone*, Judge Koeltl found that common issues "clearly predominate[d]" because "[p]roof of the allegedly monopolistic and anti-competitive conduct at the core of the alleged liability [was] common to the claims of all of the plaintiffs." 210 F.R.D. at 58.[14]

### b.    <u>Antitrust Injury</u>

In every single case where direct purchasers have sought overcharge damages flowing from the wrongful delay of generic competition, courts have answered the question of "whether injury-in-fact is susceptible to common proof" (*Cordes*, 502 F.3d at 105) in the affirmative. *E.g.*, *Buspirone*, 210 F.R.D. at 58; *Relafen*, 218 F.R.D. 343-46; *Cardizem*, 200 F.R.D. at 307-21; *Nifedipine*, 246 F.R.D. at 369-71; *Ovcon*, 246 F.R.D. at 308-10. *See also Premarin*, 225 F.R.D. at

---

[14]In fact, lawsuits alleging monopolization under Section 2 of the Sherman Act generally satisfy the predominance requirement. *E.g., Gold Strike Stamp Co. v. Christensen*, 436 F.2d 791, 795 (10th Cir. 1970) (monopolization case "superbly suited for class action"); *Lorazepam*, 202 F.R.D. at 29 ("[a]ntitrust actions involving common question of liability for monopolization . . .have frequently been held to predominate for the preliminary stage of class certification"); *Jennings Oil Co. v. Mobil Oil Corp.*, 80 F.R.D. 124, 128 (S.D.N.Y. 1978) (proof of elements of monopolization claim "undoubtedly common to all the members of the . . . class"); *Du Pont Glore Forgan Inc. v. American Telephone and Telegraph Co.*, 69 F.R.D. 481 (S.D.N.Y. 1975); *Robertson v. National Basketball Ass'n*, 389 F. Supp. 867 (S.D.N.Y. 1975); *Stephenson v. Bell Atlantic Corp.*, 177 F.R.D. 279 (D.N.J. 1997). *See generally*, 6 Alba Conte & Herbert Newberg, NEWBERG ON CLASS ACTIONS, § 18:25 & n.4 (4th ed. 2002) ("common liability issues such as . . . monopolization have, almost invariably, been held to predominate over individual issues").

217-19. This case is no exception. As this Court observed in its Opinion and Order denying

Aventis's Rule 12(b)(6) motion, if Plaintiff's allegations are proven, antitrust injury-in- fact in this

case — defined as higher leflunomide prices in the actual world, compared with a hypothetical world

in which Aventis did not engage in the conduct challenged in this lawsuit — is clear:

> It is beyond peradventure that the Plaintiff will be able to show a
> decrease in competition because the generic manufacturers were not
> able to produce the generic version of Arava until they received
> approval ***and prices could be maintained at the original level by
> Sanofi-Aventis.***

Doc. #73, at 8 (emphasis added).[15]

Such antitrust injury, also known as "impact," is shown on a classwide basis by presenting

evidence of anticompetitive conduct which artificially inflates prices market-wide. *See In re Master

Key Antitrust Litig.*, 528 F.2d 5, 12 n.11 (2d Cir. 1975) ("If the appellees establish . . . that the

defendants engaged in an unlawful national conspiracy which had ***the effect of stabilizing prices

above competitive levels***, and further establish that the appellees were consumers of that product, we

would think that the jury could reasonably conclude that appellants' conduct caused injury to each

appellee") (emphasis added).[16] Thus, methods of demonstrating, through common evidence, that

---

[15]Paying such overcharges constitutes classic antitrust injury-in-fact. *See Cordes*, 502 F.3d at 107 & n.12; *Buspirone*, 210 F.R.D. at 58; *Cardizem*, 200 F.R.D. at 309-14; *Relafen*, 218 F.R.D. at 344. *See also ante* note 1 (definition of overcharge). This Court has expressly recognized that overcharge is LWD's and the proposed Class's theory of antitrust injury. Doc. #73, at 8 ("excess in the brand v. competitive price").

[16]*See also Fears*, 2003 WL 21659373, at *6 ("[w]hether the commissions charged were higher or lower than the commissions that would have been charged in the absence of the alleged conspiracy requires common proofs here. Neither a variety of prices nor negotiated prices is an impediment to class certification if it appears that plaintiffs may be able to prove at trial that, as here, ***the price range was affected generally***") (quotation omitted) (emphasis added); *Freeland*, 238 F.R.D. at 143 (antitrust injury is provable on a classwide basis through common evidence when (continued...)

-17-

Aventis's conduct (blocking and delaying competitive entry) did, in fact, inflate the prices paid by direct purchasers of leflunomide, suffices. *See NASDAQ*, 169 F.R.D. at 520 (sufficient that plaintiffs intend to use "economic theory, academic studies, data sources, and statistical techniques — all designed to demonstrate that NASDAQ spreads were actually widened as a result of the conspiracy — that are common to the entire class").

Evidence of classwide applicability that Aventis's conduct had a direct, marketwide effect on leflunomide prices generally (*i.e.*, stabilizing them above the level that would have obtained had generic leflunomide competitors not been excluded from the market), is ***precisely*** what LWD has adduced here, through Dr. Leitzinger, to demonstrate that antitrust impact can be proven on a classwide basis. In his Declaration, Dr. Leitzinger concludes that "the antitrust impact associated with anticompetitive behavior directed at delaying or preventing generic competition lends itself naturally to class-wide analysis and can be proved on a class-wide basis," because "the benefits (*i.e.*, lower prices and/or higher discounts) associated with AB-rated generic competition are predictable, substantial ***and market-wide***." Leitzinger Decl. at 27 (emphasis added). He then sets forth four types of classwide, marketwide evidence, including empirical evidence, that both independently and in combination support the conclusion that "all (or nearly all) of the proposed Class members here

---

[16](...continued)
challenged conduct is alleged to keep prices above competitive levels and cause overcharges) (citing *In re Master Key*); *id.* at 151 (antitrust injury is provable on a classwide basis through common evidence when plaintiff has alleged deliberate interference with market forces that laws of supply and demand and logic predict would have ***direct, marketwide effect on prices***) (*dictum*) (citation omitted) (emphasis added); *NASDAQ*, 169 F.R.D. at 523 (predominance satisfied where "***price range was affected generally***" by alleged anticompetitive conduct) (emphasis added).

experienced some amount of overcharge." Leitzinger Decl. at 14.[17]  "In other words, illegal delays

in generic competition give rise to at least some overcharge — which is to say, antitrust injury —

on the part of all (or most all) direct purchasers." *Id.* at 15.

First, Dr. Leitzinger reviews the extensive body of empirical economic research, both by

governmental agencies and by academic researchers, that demonstrates that generic entry produces

substantial decreases in the prices paid for the drug product facing AB-rated generic competition.

*Id.* at 15-21.  According to this economic literature, AB-rated generic competition has this effect

primarily because generic versions are priced substantially lower than their branded counterparts and

quickly capture unit sales formerly enjoyed by the brand, but also because of discounts the branded

manufacturer may give to retain purchasers of the brand following generic entry. *Id.*  Such evidence,

which Dr. Leitzinger notes "is common to all members of the Class," shows the widespread nature

of the competitive effects of unimpaired generic entry — lower leflunomide prices — that Aventis

was able to forestall, and thereby deny to all Class members, and thus stands as strong evidence of

the classwide antitrust impact of Aventis's challenged conduct here. *Id.* at 24.

Second, Dr. Leitzinger points to internal forecasting documents prepared contemporaneously,

in the normal course of business, by Aventis and by the generic leflunomide competitors.

---

[17]Dr. Leitzinger defines the overcharge as based upon either or both the lower price a direct
purchaser would have gotten by substituting the less-expensive generic for the brand (had generic
entry not been delayed), or the discount a direct purchaser would have received from Aventis for
continuing to buy the brand after generic competition began (again, had generic entry not been
delayed). *Id.* at 13-15, 19-21, 26-27.

These forecasts are thus marketwide evidence, applicable to all Class members, demonstrating that forestalling generic entry — the conduct challenged in this case — impacts all purchasers by preventing them from obtaining the substantial savings generic competition brings. Such common evidence shows clearly the classwide antitrust impact of Aventis's alleged conduct.

Third, Dr. Leitzinger identifies empirical data demonstrating the actual effects of generic leflunomide competition once that competition was finally permitted to begin in September of 2005, following the delay complained of in this lawsuit. *Id.* at 24-25. That data shows that generic leflunomide competitors, when permitted to compete, entered the market at a steep 83-85% discount off of the branded Arava price, and by the end of 2005 had captured approximately 80% of the market for leflunomide prescriptions. *Id.* at 25. Dr. Leitzinger observes that such a "before and after study," comparing what actually occurred following the delay with the prices paid during the period of the delay, demonstrates "the substantial impact that generic leflunomide entry, and by extension its delay, had on direct purchaser costs." *Id.* at 24. Such empirical evidence is a particularly strong demonstration of the classwide antitrust impact associated with Aventis's challenged conduct.

Finally, Dr. Leitzinger points to the classes of trade corresponding to the Direct Purchaser Class members in this case — virtually all of whom are resellers of pharmaceuticals, including, *e.g.*, wholesalers and retailers, who must respond to the demands of their customers to stay in business — and reasons, based upon common evidence, including his extensive knowledge of the distribution system and his plethora of experience analyzing this same question in several similar delayed generic entry cases, that all or nearly all Class members would have purchased the less expensive generic in substitution for the brand when it became available. *Id.* at 13-15, 25-26 & n.43. Direct purchasers

"can and must buy the generic equivalent (at correspondingly lower generic prices) to meet [the demand for the less-expensive generic created by their customers], and be able to supply the customers/patients with the generic equivalent," Dr. Leitzinger concludes. He bases that conclusion on "the direct purchaser's role in the pharmaceutical distribution system and the relationship between market-wide changes in prices and purchase patterns occasioned by AB-rated generic competition." *Id.* at 28. In other words, Dr. Leitzinger concludes that because "the substitution-related price reductions that generic competition triggers invariably affect at least some customers/patients supplied by any given direct purchaser," direct purchasers "almost always buy at least some generic product." *Id.* at 14.[18] Such common evidence further demonstrates that the antitrust impact Aventis's challenged conduct caused is felt by all members of the Class.

Dr. Leitzinger's opinion about the ability to prove antitrust injury-in-fact on a classwide basis using evidence common to all Class members, and without resort to individualized analyses, is correct. The types of evidence discussed above are precisely the kind of common evidence that other courts in nearly identical cases — often based on Dr. Leitzinger's methodology — have found sufficient to satisfy plaintiff's burden at the class certification stage.[19]

---

[18]"They may also see increased discounts or lower list (*i.e.* WAC) prices for their brand purchases as a result of generic entry," Dr. Leitzinger notes, referencing the second component of the overcharge that he observes results from delayed generic competition. *Id.* at 14.

[19]*E.g., Nifedipine*, 246 F.R.D. at 369-71 & n.10 (crediting, as "reasonable and well established," Dr. Leitzinger's method of proving classwide impact using "government and academic studies that conclude, in general, that the entry of additional generic competitors drives down the price of generic and branded pharmaceuticals; (2) the defendants' testimony and internal projections that the entry of a second generic would lead to lower prices; and (3) evidence that the entry of Watson's generic version of Adalat in August 2002 led to lower prices") (citations omitted); *Ovcon*, 246 F.R.D. at 308-09 (Dr. Leitzinger's method of proving classwide antitrust impact using governmental/academic studies, defendants' own internal analyses and forecasts, and pricing data
(continued...)

Moreover, Dr. Letizinger's opinions go substantially farther than the law requires. Even though Dr. Leitzinger has demonstrated using classwide evidence that all (or virtually all) Class members were necessarily impacted by Aventis's alleged conduct, LWD need not make so strong a showing. Even if some individual Class members were not, in fact, injured, predominance is still met. *See In re Currency*, 224 F.R.D. at 566 ("[e]ven if it could be shown that some individual class members were not injured, class certification, nevertheless, is appropriate where the antitrust violation has caused widespread injury to the class").[20] Relatedly, even if it were the case here (and it is not) that individualized questions remained concerning whether one or a few Class members were impacted (*i.e.*, would have expended less money had generic competition not been delayed), "the fact that there may be some individualized questions pertaining to impact will not defeat class certification." *In re Magnetic Audiotape Antitrust Litig.*, 2001 WL 619305, *8 (S.D.N.Y. June 6,

---

[19](...continued)
for other drug molecules and Ovcon products utilizes "precisely the types of evidence that have been found sufficient to satisfy the predominance requirement with respect to proof of impact in other cases alleging delayed generic entry") (citations omitted); *Relafen*, 218 F.R.D. at 345-46 ("[t]he direct purchaser plaintiffs have met that burden [of demonstrating that common evidence of overcharges would predominate], establishing that general market effects would be proven through common evidence including governmental and academic studies, internal manufacturers' analyses, and actual market data"); *Cardizem*, 200 F.R.D. at 308 (same); *Premarin*, 225 F.R.D. at 217-18 (same).

[20]*See also NASDAQ*, 169 F.R.D. at 523 ("[t]he fact that certain members of plaintiffs' class escaped injury altogether would not preclude certification or destroy the class's *prima facie* case of impact") (quotation omitted); *Daniel*, 269 F. Supp.2d at 189-90 (same); *In re Northwest Airlines Corp.*, 208 F.R.D. 174, 223 (E.D. Mich. 2002) ("[t]he courts have recognized that, for purposes of determining whether to certify a class, the 'impact' element of an antitrust claim need not be established as to each and every class member; rather, it is enough if the plaintiffs' proposed method of proof promises to establish 'widespread injury to the class' as a result of the defendant's antitrust violation"); *Cardizem*, 200 F.R.D. at 307.

2001) (citing *In re Auction Houses Antitrust Litig.*, 193 F.R.D. 162, 167 (S.D.N.Y. 2000)).[21]

### c.    Damages

Plaintiff's burden with respect to showing antitrust damages at the class stage is a "limited" one. *Cardizem*, 200 F.R.D. at 321; *Daniel*, 269 F. Supp.2d at 199 ("at the class certification stage, Plaintiffs need only demonstrate the existence of a reasonable basis on which damages can be determined at trial"). Indeed, even the theoretical need to determine damages individually would not pose an obstacle to class certification.[22]

Due to, among other things, the well-understood, market-wide nature of the effects of delayed generic entry, and the expected availability of sales data reflecting what actually occurred (with regard to price and volume) when generic leflunomide competitors finally entered the market in September of 2005, Dr. Leitzinger has concluded that it will be feasible to calculate aggregate damages to the Class as a whole using well-established methodologies, including the "before and after" method. Leitzinger Decl. at 9, 28-31. He can be more confident than other similarly situated experts because Dr. Leitzinger has devised and refined a damages methodology in his work in at

_____

[21]Likewise, Dr. Leitzinger's method of demonstrating antitrust impact need not proceed by separately evaluating each proposed Class member's situation to determine whether it suffered antitrust impact. *Cardizem*, 200 F.R.D. at 307("[i]f generalized evidence exists which will prove or disprove this injury element on a simultaneous class-wide basis, then there is no need to examine each class members' [sic] individual circumstance[.] . . . Such an examination will relate to the quantum of damages; not the fact of injury"); *Ovcon*, 246 F.R.D. at 308 (same).

[22]*Fears*, 2003 WL 21659373, at *7 ("[e]ven if it should turn out later that certain damages must be determined on an individualized basis, that does not preclude class action certification where, as here, common issues, which define liability, predominate") (citations omitted); *Buspirone*, 210 F.R.D. at 59 ("[t]he precise damages faced by individual plaintiffs can be determined individually if and when liability has been established, and, to the extent that the overcharges overstate or understate the appropriate measure of damages for different class members, this issue can be addressed by creating subclasses if necessary"); *NASDAQ*, 169 F.R.D. at 523-24 (same). "[A]ny other rule would eliminate antitrust class actions." *Leider*, 2003 WL 22339305, *9.

least seven (7) delayed generic entry cases — a method that court after court has accepted as a basis for class certification, approval of classwide settlements, and allocation of settlement proceeds to class members. *Id.* at 2-5, 29. Such classwide aggregate damages methodologies are accepted and well-established in this Circuit, and have been used in other "generic delay" lawsuits. *See NASDAQ,* 169 F.R.D. at 521-23, 524-26 (discussing and approving of aggregate damages analyses, including using "before and after" analysis, where defendant had computer records of sales transactions to class members); *Cardizem,* 200 F.R.D. at 321-25 (approving aggregate damage assessment in analogous case); *Buspirone,* 210 F.R.D. at 58 (same); *Lorazepam,* 202 F.R.D. at 30 (same); *Nifedipine,* 246 F.R.D. at 371 (same) (Dr. Leitzinger); *Ovcon,* 246 F.R.D. at 310-12 (same; noting that "a number of courts have been satisfied that a common methodology for proving class-wide damages exists in actions alleging delayed or impeded entry of generic pharmaceuticals) (Dr. Leitzinger). Dr. Leitzinger's proposed aggregate damages analysis provides further evidence of the predominance of common issues in this case.

### 2.    Superiority

Certifying this case as a class action is superior to any other method that may exist for resolving this case or controversy, as required by Rule 23(b)(3). Each court considering the class maintainability of a federal antitrust case alleging delayed generic competition has so concluded.[23]

---

[23]*See Buspirone,* 210 F.R.D. at 58 (superiority requirement met in virtually identical action, and noting that "[t]he management difficulties of a direct purchaser class action are not substantial"); *Relafen,* 218 F.R.D. at 346-47 (class treatment would "provide substantial savings in time, effort, and expense" and would vindicate the "oft-emphasized importance of private enforcement of federal antitrust laws"); *Lorazepam,* 202 F.R.D. at 30-31 (class treatment of analogous case preferable over inefficiency of several separate lawsuits); *Cardizem,* 200 F.R.D. at 325-26 (superiority requirement met in virtually identical action, because otherwise several absent class members' claims would remain unvindicated, class treatment was most efficient, and manageability problems were minimal);
(continued...)

IV.     **CONCLUSION**

For all of the foregoing reasons, plaintiff respectfully requests that the Court enter the Order

proposed herewith, certifying this action a class action under Fed. R. Civ. P. 23(b)(3) on behalf of

the Class as defined in plaintiff's Notice of Motion.[24]

Dated: <u>January 31, 2008</u>

Respectfully submitted,

On the Brief:                                  Bruce E. Gerstein
Daniel Berger                                  Barry S. Taus
David F. Sorensen                              Anne K. Fornecker
Eric L. Cramer                                 **GARWIN GERSTEIN & FISHER, LLP**
Peter Kohn                                     1501 Broadway, Suite 1416
**BERGER & MONTAGUE, P.C.**                    New York, NY 10036
1622 Locust Street                             (212) 398-0055
Philadelphia, PA 19103
(215) 875-3000                                 *Proposed Lead Counsel for Louisiana*
                                               *Wholesale Drug Co., Inc. and the Proposed*
*Counsel for Louisiana Wholesale Drug Co.,*    *Class*
*Inc. and the Proposed Class*

---

[23](...continued)
*Premarin*, 225 F.R.D. at 220 (superiority established where, *inter alia*, defendant would appear to benefit from resolving its liability in a single action); *Nifedipine*, 246 F.R.D. at 371-72 (superiority established because "dozens of separate trials" featuring similar evidence would be inefficient); *Ovcon*, 246 F.R.D. at 313 (class action superior because manageability problems absent and "the Court is at a loss to understand how" several individual actions would promote efficiency).

[24]Plaintiff includes this brief discussion of notice to the Class pursuant to Rule 23(c)(2)(B). Plaintiff suggests that first-class mailing to class members is the best means practicable under the circumstaces in this case.  First, ascertaining the identity and mailing addresses of Class members will be simple. *See* Doc. #71 ¶ 17 ("Aventis admits . . . that the identity of persons who purchased 10 mg and 20 mg tablets directly from it during the period alleged in the Complaint may be ascertained from the transactional data Aventis has produced already to Louisiana Wholesale"). Second, "[h]istorically, first class mailing has been utilized because it provides a controlled method by which individual notification can be provided through a reliable process which ensures that proper notice is received by the potential class members."  *Karvaly v. eBay, Inc.*, 245 F.R.D. 71, 91 (E.D.N.Y. 2007) (citation omitted); *Barone v. Safeway Steel Products, Inc.*, 2005 WL 2009882 (E.D.N.Y. 2005) ("notice by first class mail ordinarily satisfies rule 23(c)(2)'s requirement that class members receive the best notice practicable under the circumstances") (citations and quotations omitted).

John Gregory Odom
Stuart Des Roches
Charles F. Zimmer II
**ODOM & DES ROCHES, LLP**
Suite 2020, Poydras Center
650 Poydras Street
New Orleans, LA 70130
(504) 522-0077

Adam Moskowitz
Tucker Ronzetti
**KOZYAK TROPIN &
THROCKMORTON**
2525 Ponce de Leon Blvd, 9th Fl.
Miami, FL 33134
(305) 372-1800

Brent Barriere
Susie Morgan
**PHELPS DUNBAR**
Canal Place, Suite 2000
365 Canal Street
New Orleans, LA 70130-6534

David P. Smith
W. Ross Foote
**PERCY, SMITH & FOOTE, LLP**
720 Murray Street
P.O. Box. 1632
Alexandria, LA 71309
(318) 445-4480

Richard Kilsheimer
Linda Nussbaum
**KAPLAN FOX & KILSHEIMER LLP**
850 Third Avenue, 14th Floor
New York, NY 10022
(212) 687-1980

*Counsel for Louisiana Wholesale Drug Co.,
Inc. and the Proposed Class*